UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

SEAN CUTTING, BRIAN MELLAND AND DAVID LONICH,

Defendants.

Case No.   14-cr-00139-SI

Case No. 17-cr-00139 SI

**ORDER DENYING DEFENDANTS' POST-TRIAL MOTIONS**

Re: Dkt. Nos. 681, 682, 684, 685

On April 27, 2018, the Court held a hearing on the motions for acquittal and/or new trial filed by defendants Cutting, Melland and Lonich.[1]  The factual and procedural background of this case is extensive and familiar to all parties, and the Court does not recount it here except as relevant to the current motions.

After a six week trial and seven days of deliberations, a jury returned guilty verdicts against all defendants.  The jury found Cutting guilty on Count 1 (conspiracy to commit bank fraud), Count 2 (bank fraud), Count 5 (false bank entry regarding the Petaluma Greenbriar 5 ("PG5") loan), Count 6 (conspiracy to make false statements to the FDIC), Count 7 (misapplication of bank funds), Count 8 (false statements to the FDIC), Count 10 (conspiracy to commit wire fraud), Counts 11-15 (wire fraud), Counts 19-30 (money laundering) and Counts 32-

---

[1]  Defendant Cutting filed separate motions for a new trial and for judgment of acquittal, Dkt. Nos. 681 & 682, defendant Lonich filed a combined motion for a new trial and judgment of acquittal, Dkt. No. 684, and defendant Melland filed a combined motion for a new trial and judgment of acquittal, Dkt. No. 685.  Defendant Cutting has joined in Lonich's motion, Melland has joined in the motions filed by Cutting and Lonich, and Lonich has joined in the motions filed by Melland and Cutting, with the exception of certain of Cutting's arguments that do not pertain to him.  *See* Dkt. Nos. 687, 689 & 690.  This order only lists the docket numbers in No. 14-cr-139 SI and not the corresponding identical filings in No. 17-cr-139 SI.

36 (false bank entries regarding the condo letters).[2] The jury found Cutting not guilty on Count 3 (false bank entry regarding the Petaluma Greenbriar 1 ("PG1") loan), Count 4 (false bank entry regarding the Petaluma Greenbriar 2 ("PG2") loan), and Count 16 (wire fraud regarding the Terra Capital partners email dated October 18, 2010). The jury found Melland guilty on Counts 1-8, Count 9 (receipt of gifts for procuring loans), Counts 10-15, 19-30, and 32-36, and not guilty on Count 16. The jury found Lonich guilty on Counts 1 and 2, 10-15, 19-30, 32-36, and Count 37 (obstruction of justice). As with his co-defendants, the jury found Lonich not guilty on Count 16.

## LEGAL STANDARDS

Rule 29 of the Federal Rules of Criminal Procedure requires the Court, on a defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court's review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires a court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319; *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010); *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc). This rule establishes a two-step inquiry:

> First, a . . . court must consider the evidence presented at trial in the light most favorable to the prosecution. . . . [And s]econd, after viewing the evidence in the light most favorable to the prosecution, the . . . court must determine whether this evidence, so viewed, is adequate to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."

*Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 319) (final alteration in *Nevils*).

Pursuant to Rule 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Ninth Circuit described the standard for granting a new trial in *United States. v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206 (9th Cir. 1992), which it reaffirmed in *United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000):

---

[2] Prior to trial, the government dismissed Counts 17, 18 and 31 against all defendants.

United States District Court
Northern District of California

> [A] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses. . . . If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Kellington*, 217 F.3d at 1097 (internal quotation marks and citations omitted). However, the Court's discretion is not unconstrained. Under Rule 33, the Court should grant a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Showalter*, 569 F.3d 1150, 1157 (9th Cir. 2009) (quoting *United States v. Pimental*, 654 F.2d 538, 545 (9th Cir. 1981)).

## DISCUSSION

### I.  Sufficiency of the evidence:  all defendants

All defendants move for either a new trial or acquittal on the ground that the evidence does not support their convictions. Cutting argues that the government failed to establish that he possessed the requisite criminal intent, and that "the undisputed evidence demonstrated that Mr. Cutting acted in good faith, which is a complete defense to the charges." Dkt. No. 681 at 1. Melland asserts that the evidence was insufficient on all counts without advancing any specific argument. Dkt. No. 685 at 27. Lonich argues that there is insufficient (or no) evidence that he intended to defraud, and thus that all of the fraud and conspiracy counts should be set aside. Lonich also contends that he had no duty to make any disclosures to any of the alleged victims in this case, and that the government impermissibly obtained convictions on the wire fraud and money laundering counts based on a "pure omissions" theory.[3] Finally, Lonich argues that the obstruction of justice conviction (Count 37) should be set aside because no rational jury could have concluded that Lonich's statements to House regarding the ownership structure of 101 Houseco were evidence that Lonich attempted to obstruct an unrelated grand jury proceeding

---

[3]  Lonich's reply clarifies that he is not raising a challenge to the jury instructions, but rather to the sufficiency of the evidence. Dkt. No. 699 at 1 ("Mr. Lonich brings a sufficiency claim regarding the identification of any duty to disclose that would support an omissions theory . . . Mr. Lonich has presented a sufficiency claim, not a claim of instructional error.").

<div style="margin-left:auto">United States District Court<br>Northern District of California</div>

regarding House's purchase of a condominium in Reno. Lonich contends that he was acting as House's attorney, and thus that his statements constituted "lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding." Dkt. No. 684 at 5.

Applying the standards of review set forth in Rules 29 and 33, the Court DENIES defendants' motions because there was extensive evidence at trial to support all of the convictions. As discussed in the government's oppositions to the defense motions, the jury could reasonably have concluded from the evidence that defendants possessed the intent to defraud all of the alleged victims, and that defendants conspired with each other to carry out their schemes to defraud. *See* Dkt. No. 692 at 2-4 (discussing evidence); Dkt. No. 691 at 1-7 (discussing evidence).

With regard to Lonich's "no duty to disclose" argument, the government responds that Lonich "fails to identify any relevant omissions that the jury could have relied upon in the first place in order to convict him under a pure omissions theory," and that the evidence showed that Lonich lied to all of the alleged victims in this case. *See generally* Dkt. No. 691 at 2-6 (discussing evidence against Lonich). The Court agrees. With regard to the single example cited by Lonich in his motion papers (the government's summation regarding DebtX, Dkt. No. 652 at 91-96), the government argues that "[w]hen Lonich told Ken Daley at DebtX that he was 'concurring with every statement made by Mr. House' in the purchase eligibility statement, he lied to them . . . because the purchase eligibility form itself contained numerous lies, including, most broadly, the statement that House was eligible to bid on the failed IndyMac note." Dkt. No.691 at 2. Indeed, a review of the government's summation shows that the government argued that Lonich made "false and misleading" representations to DebtX (as well as the other alleged victims), Dkt. No. 652 at 94-96 (summation). There is no support for Lonich's contention that the government pursued a "pure omissions" theory against him, and the government introduced evidence showing that Lonich lied to DebtX and the other alleged victims.

Finally, there was ample evidence to support Lonich's obstruction of justice conviction, including undercover videos in which House told Lonich that the authorities were interested in 101 Houseco, and Lonich instructed House about what to tell the authorities about the ownership of that entity.

## II.     Cutting's additional arguments

Cutting makes seven additional claims: (1) the prosecution engaged in misconduct in the rebuttal closing argument, thus warranting a new trial; (2) the prosecution engaged in misconduct throughout the trial by eliciting false testimony and during discovery, warranting dismissal of the case with prejudice; (3) the evidence regarding SVB's failure led the jury to convict on an improper basis in violation of Federal Rule of Evidence 403; (4) evidence from percipient attorney witnesses created an "insurmountable 13th juror problem"; (5) the government constructively amended the indictments by pursuing accounting theories beyond the legal lending limit theory; (6) the government violated Cutting's Sixth Amendment right to a speedy trial by pursuing loans other than the 101 Houseco loan; and (7) Counts 19-22 must be dismissed pursuant to *United States v. Santos*, 533 U.S. 507 (2008), because the transactions at issue relate to promotional money laundering, thus creating an impermissible "merger" problem.

As an initial matter, the Court notes that defendant has raised most or all of these issues previously, through various pretrial and trial motions, objections at trial, and cross-examination of trial witnesses.  The Court finds no reason to depart from its previous rulings, and finds that defendant has not shown any error or prejudice that would warrant either a new trial or dismissal.[4]

The Court makes the following additional findings.  Regarding the prosecutor's rebuttal argument, after the defense objected the prosecution corrected the record and clarified that Cutting became a member of the board of directors in January 2008.  The Court finds there was no prosecutorial misconduct with regard to the rebuttal.  As to Cutting's arguments regarding other instances of alleged prosecutorial misconduct both during trial and in pretrial proceedings, the Court finds no basis for dismissal.  In the examples of witness questioning identified by defendant, the prosecutor's questions may have been inartful, but when the testimony is read in context, it does not appear that the prosecutor was intentionally attempting to elicit false testimony.[5]

---

[4]  For example, Cutting's Sixth Amendment speedy trial argument has been the subject of extensive pretrial motion practice and an appeal to the Ninth Circuit.

[5]  For example, Cutting strenuously argues that the prosecutor intentionally elicited false testimony from Jim House regarding the nature of his contacts with SVB employees at various times in 2009 when SVB made loans to 101 Houseco. *See* Dkt. No. 682 at 10 (citing House Testimony Vol. 1 at 53:11-19; 55:11-10; 58:10-22). Cutting argues that in the cited testimony, the prosecutor "had Mr. House testify on three separate occasions that Mr. House did not communicate with SVB representatives [in 2009] before SVB made a loan to 101 Houseco. . . .

United States District Court
Northern District of California

United States District Court
Northern District of California

Moreover, in every example provided by defendant, defense counsel brought out the purported inconsistencies in testimony and/or the "falsehoods," and these issues were fully aired before the jury and in defense counsel's closing arguments. To the extent defendant raises questions about the prosecutors' conduct in discovery, the record reflects that the Court addressed the numerous and complex discovery issues throughout this litigation, and Cutting has not shown any misconduct regarding the apparent loss of a box of work papers related to the 2008 bank examination. The documents at issue consist of regulatory records from the 2008 DFI bank examination, and while the Court has held that the FDIC is a member of the prosecution team, the Court cannot conclude on this record that the prosecution can be held responsible for the loss of the 2008 DFI work papers. Further, although defendant asserts that the work papers may have contained exculpatory material showing that the DFI examiners concluded in 2008 that there was

---

But the testimony was false and the prosecution had to know it. The government had several documents on its exhibit list that demonstrated that Mr. House repeatedly communicated with Mr. Melland during the time period at issue (Gov't Trial Exs. 908 and 911.)." Dkt. No. 682 at 10.

The Court is not persuaded by this argument. When the cited testimony is read in context, it appears that the prosecutor was attempting to establish the fact that SVB loaned 101 Houseco close to $10 million without Cutting or Melland having met Mr. House and without Mr. House having any meaningful relationship with SVB. *See generally* Dkt. No. 552 at 53-58 (House Testimony Vol. 1). Further, on House's direct examination, the government introduced numerous exhibits showing that at Lonich's direction, House sent Melland emails regarding various bank transactions, *see e.g.*, Exhibit 834 (March 23, 2009 email from House to Lonich and Melland); Exhibit 836 (March 23, 2009 email from House to Lonich and Melland), including the same two exhibits cited by Cutting in his motion for a new trial: Exhibits 908 and 911. *See* Dkt. No. 553 at 139-141 (House Testimony Vol. 2; admitting Exhibits 908 and 911 on House direct testimony). A review of House's trial testimony (which spanned four days) shows that the government was not trying to hide the fact that House communicated by email with Melland and Cutting in 2009, and to the contrary, the government introduced evidence of these communications. *See e.g.*, Exhibit 1258 (October 23, 2009 email regarding wiring instructions from House to Melland, Cutting and Lonich).

Cutting also asserts that House "admitted that he knowingly testified falsely at AUSA Rees' request" and that the prosecutor committed misconduct by failing to correct the testimony. However, a review of House's cross-examination shows that when he was questioned about his testimony that he had not had any contact with anyone at SVB as of May 3, 2009, House stated his understanding that "email was not included," that he was not intending to lie to the jury, and that "[w]hen the word 'contact' came, I meant had I ever met with him or spent time with him. And I've never met or spent time with Mr. Melland." Dkt. No. 554 at 399-402. (House Testimony Vol. 3). When shown his actual testimony on direct, Mr. House did acknowledge that his answer of "yes" to the question of whether he had had "any contact" with anyone at SVB around the May 3, 2009 time period was "false." *Id.* at 402. On this record, the Court finds that defendant has not shown that the prosecutor knowingly elicited false testimony or that there was any constitutional violation warranting a new trial. *Cf. United States v. LaPage*, 231 F.3d 488 (9th Cir. 2000) (holding government violated the defendant's right to due process where it was undisputed that prosecutor knowingly presented false testimony from witness and there was a reasonable likelihood that the false testimony affected the jury's verdict).

6

no lending limit violation, the defense extensively cross-examined the bank examiner regarding the 2008 bank examination, including regarding the DFI's 2008 examination and the examiner's ultimate conclusion that SVB had in fact committed a lending limit violation.

The Court finds no error in the admission of evidence regarding the riskiness of the loans at issue, including evidence that defendants had been advised not to make the loans by the percipient attorney witnesses and others. In the final pretrial order, the Court granted defendant's motion in limine #3 and ruled that "[t]he government may not argue that defendants' offense conduct *caused* the failure of SVB. However, a defendant's knowledge of risk of loss is relevant to proof of intent to defraud. *United States v. Molinaro*, 11 F.3d 853, 861 (9th Cir. 1993); *United States v. Rizk*, 660 F.3d 1125, 1135 (9th Cir. 2011)." Dkt. No. 471 at 8. The Court allowed evidence at trial consistent with this pretrial ruling.

In addition, the Court finds that the testimony from percipient attorney witnesses was not unduly prejudicial under Rule 403, nor did that testimony contain impermissible legal conclusions. The attorney witnesses testified about their own actions with regard to the loans in this case, and their testimony that they had concerns about the legality of the loans and the assert verification letters explained their actions (such as testimony by Gerrish about legal work SVB hired him to do regarding the false asset verification letters, and Schoppert's testimony explaining why he ultimately reported those letters to Gerrish).

The Court also finds that government did not constructively amend the indictments by introducing new theories of liability at trial. The trial record shows that the government presented evidence throughout the trial consistent with its theory that defendants conspired to defraud SVB by engaging in lending limit violations, and that Cutting and Melland falsified bank records and lied to the FDIC to cover up the lending limit violations, and the government's closing argument did not stray from this theory.

Finally, the Court denies Cutting's motion for judgment of acquittal on Counts 19-22. Counts 19-22 charged money laundering and involve four payments made between March 29, 2009 and May 8, 2009, from an account in the name of "House Construction," controlled by co-conspirator House, to an account in the name of "Masma Construction," controlled by Madjlessi. The evidence at trial showed that House was a straw borrower who received loans from SVB, and

United States District Court
Northern District of California

that at the direction of Madjlessi and Lonich, House transferred the loan proceeds from the House Construction account to the Masma Construction account. The evidence also showed that after the money was transferred to the Masma account, Madjlessi used some of that money to pay off the SVB loans.

Cutting argues that under *United States v. Santos*, 553 U.S. 507 (2008),[6] the convictions for Counts 19-22 must be set aside because the conduct underlying the money laundering allegations relates to promotional, not concealment, money laundering because "the transactions allegedly enabled defendants to carry out the alleged scheme to defraud." Dkt. No. 684 at 11. Cutting argues that "the government's core theory was that SVB was lending new money so old SVB loans looked like they were doing better than they really were." Cutting argues that because the government argued that the SVB loan proceeds were used to perpetuate the bank and wire fraud, the government cannot also charge money laundering based on that conduct.

The Court agrees with the reasoning set forth in the government's opposition and finds that Counts 19-22 do not present a problem under *Santos*. *See generally* Dkt. No. 692 at 5-8; *see also United States v. Wilkes*, 662 F.3d 524, 547 (9th Cir. 2011) (rejecting *Santos* challenge and affirming money laundering conviction where "the effort to disguise the source of the money was an additional act that is separately punishable."). Further, as the government notes, the Ninth Circuit has held that when "a money laundering count is based on transfers among co-conspirators of money from the sale of drugs, 'proceeds' includes all 'receipts' from such sales." *United States v. Webster*, 623 F.3d 901, 906 (9th Cir. 2010). In *Wilkes*, the Ninth Circuit "extended *Webster*'s rationale beyond drug cases and into the context of fraud and bribery." *Grasso*, 724 F.3d at 1093; *see also Wilkes*, 662 F.3d at 545-49 (upholding money laundering convictions in scheme involving kickbacks to a Congressman in exchange for government contracts, and rejecting challenge based on *Santos* that transfer of funds to Congressman was "merely an expense associated with the bribery, and, thus, not 'proceeds' under the money laundering statute" because money laundering

---

[6] The Court has previously analyzed, on a motion to dismiss, Cutting's challenge to these money laundering counts under *Santos*, and the Court incorporates its analysis from that prior order. *See* Dkt. No. 162 at 16-18; *see also generally United States v. Grasso*, 724 F.3d 1077, 1090-1092 (9th Cir. 2013) (analyzing the plurality, dissenting and concurring opinions in *Santos* and discussing post-*Santos* case law in Ninth Circuit regarding "promotional" versus "concealment" money laundering).

United States District Court
Northern District of California

count "was based on a transfer to a co-conspirator of money from honest services fraud and bribery such that 'proceeds' would include all 'receipts' from the fraud.").

### III.    Melland's additional arguments

Melland contends that either the indictments should have been provided to the jury, or that the jury instructions were flawed because the jury was never advised what was charged in the indictments.  Melland asserts that "[n]othing exists in a vacuum, and an indictment's allegations which were neither read, summarized, nor incorporated into jury instructions, share this same nothingness."  Dkt. No. 703 at 1.  Melland argues that the jury instructions were fatally flawed because they did not require each of the jurors to agree unanimously on the same single scheme as charged by the grand jury to convict, and thus there is no way to know whether the jury convicted defendants based on the charges in the indictments.  Melland also argues that because the instructions did not incorporate the indictments, the jury was never told "what were the false statements or omissions alleged to have been made by the defendants in either the mail or bank schemes to defraud."  *Id*. at 2.

The Court finds these arguments unpersuasive.  As an initial matter, "it is well settled that the jury must be fairly apprised of the nature of the charges against the defendant, but this does not necessarily require a reading of the indictment to the jury either in whole or in part."  *United States v. Robles*, 279 F.2d 401, 403-04 (9th Cir. 1960).[7]  All of the parties went into great detail about the nature of the charges, including the charged conspiracies and the specific false statements, in the opening statements and closing arguments.  In addition, the Court provided the jury with a summary of the charged statutory violations against each defendant.  The jury instructions specifically stated that the jurors had to decide whether one or more of the conspiracies charged in the indictments existed (Instruction No. 26), and the substantive instructions referenced the relevant count of the indictments, the statutory violation alleged, and the time frame of the conspiracies.  *See e.g.,* Instruction No. 21 ("Defendants Cutting, Melland, and Lonich are charged in Count One of the indictment with conspiring to commit bank fraud in

---

[7] The Court notes that Lonich and Cutting opposed providing the indictments to the jury.

United States District Court
Northern District of California

violation of Section 371 of Title 18 of the United States Code . . . ."). Melland's argument that the jury convicted defendants of crimes that differed from what was charged is speculative and unsupported by the record at trial and the jury instructions, which show that the jury was aware of the nature of the charges and instructed accordingly.

Melland also argues that the three conspiracies charged were "duplicitous and/or multiplicitous." Melland argues that "even if the indictment itself was not multiplicitous, the proof presented at trial demonstrated the existence of only one unitary scheme to defraud." Dkt. No. 685 at 25. Similarly, Melland argues that the charged conspiracies are duplicitous because they "all fall[] within one unitary scheme to defraud." *Id*. at 24.[8]

The Court has rejected these challenges previously and does so again. "The test to determine whether an indictment is multiplicitous is whether each separately violated statutory provision requires proof of an additional fact which the other does not." *United States v. Vargas-Castillo*, 329 F.3d 715, 719 (9th Cir. 2003) (internal quotation marks and citation omitted). Here, the indictment charged three separate conspiracies (bank fraud, wire fraud, and false statements to the FDIC), each of which required proof of a fact that the others did not. The evidence at trial was sufficient from which the jury could conclude that there were separate conspiracies rather than a single unitary conspiracy with multiple aims.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motions for a new trial and/or judgment of acquittal.

**IT IS SO ORDERED**.

Dated: May 1, 2018

_____
SUSAN ILLSTON
United States District Judge

---

[8] "An indictment is considered duplicitous if a single count combines two or more different offenses." *United States v. Renteria*, 557 F.3d 1003, 1007 (9th Cir. 2009). Melland's challenge appears to be one of multiplicity rather than of duplicity, as he is arguing that the separately charged conspiracies were actually one large conspiracy.

10

United States District Court
Northern District of California