UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SEAN CUTTING, BRIAN MELLAND, and DAVID LONICH,<br><br>Defendants. | Case Nos. 14-cr-00139-SI-1 & 17-cr-00139 SI<br><br>**ORDER GRANTING DEFENDANT SEAN CUTTING'S MOTION TO VACATE EVIDENTIARY HEARING AND BRIEFING SCHEDULE AND SETTING FURTHER SENTENCING DATE FOR MARCH 17, 2023**<br><br>Re: Dkt. Nos. 1043, 1051, 1053 (14-cr-139)<br><br>Re: Dkt. Nos. 507, 518, 520 (17-cr-139) |

On November 28, 2022, the Court held a hearing on defendant Sean Cutting's motion to vacate the January 24, 2023 evidentiary hearing and related briefing schedule, and request to set a resentencing date. Defendants Melland and Lonich joined in the motion. For the reasons set forth below, the Court GRANTS defendant's motion. The Court also GRANTS defendant's administrative motion to seal Exhibit L in support of the motion.

In vacating defendants' sentences, the Ninth Circuit held that the government did not prove by clear and convincing evidence that defendants' criminal conduct caused Sonoma Valley Bank ("SVB") to fail, and thus that the government had not established that defendants should receive certain sentencing enhancements. *United States v. Lonich*, 23 F.4th 881, 917-19 (9th Cir. 2022). The Court of Appeals stated that the causal inquiry about the bank's failure was "thoroughly disconnected from the jury's verdict" because "[t]he jury's guilty verdicts do not compel the conclusion—or even plausibly demonstrate—that the defendants through their criminal conduct were responsible for SVB's collapse." *Id*. at 915. The Ninth Circuit reviewed the evidence relied upon by the government to support the loss enhancement and found that none of the material sufficiently showed "that defendants were responsible for SVB failing, especially given the

indications in the record that other factors internal and external to the bank may have contributed to the bank's failure." *Id*. at 917.  The court found that "[w]hile the FDIC report noted its concern for SVB concentrating too much capital in Madjlessi, it also mentioned a host of other issues besetting SVB, including poor management, deteriorating market conditions, concentrated lending to another larger borrower, poor financial reporting, and so on." *Id*.   The court continued,

> The government argues in its briefing that the other problems the FDIC report identifies are "all hallmarks of the Madjlessi relationship."  But setting aside that the FDIC report does not connect all the bank's problems to Madjlessi, that the Madjlessi loans may have reflected the bank's otherwise poor practices does not mean those loans (much less defendants' criminal conduct) are, standing alone, what caused the bank to fail.  Based on the FDIC report, it is not clear whether SVB's collapse was caused by defendants' conspiracy-related loans or by other "intervening" and "independent" factors, including outside economic forces.

*Id.*  In addition, the court found that three investigative reports cited by the government were insufficient because "[a]though these examiners generally opined that the defendants caused the bank to fail, the written reports do not identify the bases for those conclusory opinions" and "[t]he reports also do not discuss the role of other potential factors flagged in the FDIC report, such as adverse economic conditions or the bank's overall poor management practices." *Id*. at 918.  The Ninth Circuit remanded on an open record to allow the government to justify its requested enhancements.

On August, 8, 2022, this Court held a status conference to address next steps on remand. Linker Decl., Ex. F at 4.  The Court set an evidentiary hearing for January 24, 2023, and ordered that briefing and declarations be filed explaining "why [the defendants' criminal conduct] did cause the failure of the bank" prior to the evidentiary hearing.  *Id*. at 21 (emphasis added).  Because the issue of causation is extremely complicated, the Court ordered that both parties "put everything in your papers." *Id*. at 23; Linker Decl., Ex. G ("Court orders parties to fully brief the matter via papers.") (minute order).

On October 14, 2022, the government filed its brief and the supporting declarations that it contends meets its burden on remand.  The government relies primarily on three expert/percipient declarations, each approximately one and a half pages long.[1]   Attached to each declaration are

---

[1] The government also submitted two declarations from people who testified at trial (Tamara

voluminous[2] exhibits that are "incorporated by reference" in the declarations. Each declarant states that "based on the information contained" in the exhibits, "I conclude that the primary reason the bank failed was because of the large concentration of poorly performing credit centered around Bijan Madjlessi." Torres Decl. ¶ 4; Trask Decl. ¶ 4; Chavez Decl. ¶ 4. The three declarations contain the following virtually identical[3] (and only) paragraphs in support of the ultimate causation opinion:

> 5. The concentration of credit centered around Bijan Madjlessi included loans to him and entities directly associated with him, as well as other loans more indirectly associated with him in the books and records of the bank that I reviewed, such as the 101 Houseco loan and the Petaluma Greenbriar loans.
>
> 6. In late 2009 and 2010, it became clear that Bijan Madjlessi was not able to pay his debts. See Exhibits B-D. This lack of creditworthiness, combined with the large concentration of credit centered around him, severely damaged the asset quality of the bank. See id. Additionally, during that same time period, the capital levels of the bank were critically low, and lower than they should have been had the bank properly accounted for the true totality of its lending relationship with Bijan Madjlessi. Additionally, both the asset quality and capital levels of the bank would have been stronger if it had not violated its legal lending limit with respect to him and his related entities.
>
> 7. These asset and capital problems for the bank, largely created by the concentration of credit centered around Bijan Madjlessi as described herein, severely damaged the overall financial condition of the bank and form part of the basis for my conclusion that the primary reason Sonoma Valley Bank failed was because of the large concentration of poorly performing credit centered around Bijan Madjlessi.
>
> 8. If the concentration of credit centered around Bijan Madjlessi were greater than reflected in the information contained in Exhibits B-D, it would strengthen my conclusion that the primary reason Sonoma Valley Bank failed was because of the large concentration of poorly performing credit centered around Bijan Madjlessi.

Torres Decl. ¶¶ 5-8; Trask Decl. ¶¶ 5-8; Chavez Decl. ¶¶ 5-8. As reflected in this excerpt, none of the declarations cite to or address any specific portions of the attached exhibits.

The Court concludes that the government has not met its burden to show by clear and

---

Weber and Jeffrey Schoppert), and attached to their declarations the witnesses' trial testimony and documentary exhibits admitted during their testimony. Neither of these declarants opines that defendants caused SVB to fail.

[2] The exhibits range from 105 pages in length for Mr. Trask to 1636 pages for Mr. Torres.

[3] The only difference between the quoted paragraphs relates to the specific exhibits attached to the declarations. For example, Mr. Chavez's declaration does not have an Exhibit D, and the specific exhibits attached to the declarations are different.

convincing evidence that the defendants' criminal conduct caused SVB's collapse, and thus that there is no need for the January 2023 evidentiary hearing. The government's declarants do not state, except in a high-level and conclusory fashion, the bases for their causation opinions. It is the Court's opinion that the three new expert/percipient declarations suffer from the same deficiencies that the Ninth Circuit identified with regard to the three investigative reports previously relied upon by the government. Remarkably, and critically, the declarations do not "discuss the role of other potential factors . . . such as adverse economic conditions or the bank's overall poor management practices." *Lonich*, 23 F.3d at 918. Thus, the Court cannot conclude based on the factual record before it that defendants' criminal conduct *caused* SVB to fail, as opposed to other internal and external factors.

At the hearing, counsel for the government argued that the exhibits attached to the expert/percipient witnesses – and in particular, Exhibit D attached to the Torres Declaration – were the gathered "breadcrumbs" that demonstrated that defendants caused the bank to fail. Counsel stressed that Exhibit D (which is 1,565 pages long) is an FDIC investigation closing report that was issued after the bank's failure, unlike the FDIC report issued before the bank's failure that was discussed in the Ninth Circuit's opinion. However, in response to the Court's questioning at the hearing, counsel for the government admitted that none of the exhibits or reports attached to the declarations, including Exhibit D, explicitly state that the Madjlessi loans caused SVB to fail, but the government asserted that this conclusion was "implicit" in those materials. That argument falls far short. As the Ninth Circuit made clear in its opinion, it is the government's burden to show by clear and convincing evidence that defendants caused the bank to fail, and that burden is not met by submitting declarations containing conclusory opinions that do not explain the bases for the opinions and that do not address the role of other potential causes of the bank's collapse. Further, it is not the job of the Court to sift through thousands of pages of exhibits to try to connect the government's trail of implicit breadcrumbs into a causation theory.[4]

---

[4] Counsel for the government also repeatedly argued that defendants had failed to meet their burden on remand by not submitting any evidence of their own, such as an expert declaration, to contest causation. However, defendants have no obligation to do so when the government has not met its threshold burden of proof. *See United States v. Waknine*, 543 F.3d 546, 557-58 (9th Cir. 2008) (reversing where government failed to prove restitution loss by preponderance of the evidence based on victim affidavits, irrespective of fact that defendant offered no "counter evidence"); *United*

Counsel for the government also asserted that the jury's verdicts on the conspiracy to commit bank fraud count established, or at least supported, the factual finding that defendants had caused the bank to fail. This argument flies directly in the face of the Ninth Circuit's opinion. In holding that the clear and convincing evidence standard applies, rather than a preponderance of the evidence, the court found, *inter alia*, that "there is a notable mismatch between the scope of the criminal convictions and the losses that supposedly drove the bank's failure," that "a substantial amount of uncharged and acquitted conduct contributed to the bank's collapse, and thus the claimed losses," and "[w]hen uncharged or acquitted conduct is in the mix to such an extent, the mere fact of the conspiracy convictions—and thus *Valensia* factor four—is not dispositive." *Lonich*, 23 F.4th at 915. The Ninth Circuit continued, "unlike our past conspiracy cases, this case involves a substantial intermediate causation question: to conclude that defendants' conspiratorial conduct caused the government's losses, the district court had to determine that defendants' criminal conduct caused the bank's collapse. . . . The jury's guilty verdicts do not compel the conclusion—*or even plausibly demonstrate*—that the defendants through their criminal conduct were responsible for SVB's collapse. In fact, the jury was not even permitted to hear evidence on why the bank failed." *Id.* (emphasis added).

The government was directed to fully brief the causation question and lay out all of its evidence in support of its contention that defendants' criminal conduct caused the bank to fail. For the reasons stated above, the Court concludes that the government has fallen far short of demonstrating by clear and convincing evidence that defendants caused SVB's collapse. Accordingly, the Court GRANTS defendant's motion, VACATES the briefing schedule and the January 24, 2023 evidentiary hearing, and schedules defendants' resentencing for March 17, 2023 at 1 p.m.

**IT IS SO ORDERED**.

Dated: November 29, 2022

_____
SUSAN ILLSTON
United States District Judge

---

*States v. Tsosie*, 639 F.3d 1213, 1221 (9th Cir. 2011) (recognizing same and noting evidence must "meet a threshold level of adequacy").